22 So.2d 666

**PEROT** et al. v. **POLICE JURY OF NATCHITOCHES PARISH** et al.

No. 37560.

April 30, 1945.

Rehearing Denied June 5, 1945.

John R. Hunter & Son, of Alexandria,
Watson & Williams, of Natchitoches, and
Emmet Alpha, of New Orleans, for plain-
tiffs-appellants.

H. L. Hughes, Dist. Atty., and Russell E. Gahagan, both of Natchitoches, for defendants.

ROGERS, Justice.

This suit was instituted by a number of residents of the Parish of Natchitoches to annul an ordinance of the police jury prohibiting the sale of intoxicating liquors in the parish. The ordinance was adopted after a local option election was called and held as requested by petitions presented to the police jury and a majority of the votes cast at the election were in favor of such prohibition.

Plaintiffs, in their suit, seek to enjoin the parochial authorities from enforcing the ordinance. After the trial of the merits there was judgment dismissing plaintiffs' suit at their cost and plaintiffs have appealed from the judgment.

Plaintiffs, in their petition, allege seven grounds of complaint against the validity of the ordinance. Their first ground of complaint is to the refusal of the police jury to consider counterpetitions containing the names of more than five hundred voters of the parish requesting that their names be withdrawn from the petitions asking that the local option election be called. Plaintiffs contend that if the names of the signers of the counterpetitions had been withdrawn from the petitions asking that the election be called, those petitions would have contained less than the number of names required by law.

Attached to the petitions asking that the election be called was a certificate of the registrar of voters certifying that there were 8,598 registered voters in the parish and that there were 3,144 names on the petitions, of whom 2,646 were qualified voters. The counterpetitions contained the names of about 1,000 persons, of whom it is alleged only 500 were qualified voters whose names appeared on the original petitions.

[1] Under Section 4 of Act No. 17 of the First Extra Session of 1935, the Local Option Law, it is the mandatory duty of a police jury to call a local option election upon the presentation of a petition containing twenty-five per cent of the qualified voters of the parish, as shown by the certificate of the registrar of voters. The petitions presented to the police jury in this case asking that a local option election be called complied in every respect with the statutory provision. The counterpetitions not only did not contain any certificate of the registrar of voters certifying that five hundred qualified voters whose names were on the counterpetitions were also on the original petition, but they did not affirmatively show that such was the fact. The signers of the counterpetitions did not declare that they signed the original petitions. They merely requested that if their signatures appeared on the original petitions, they be withdrawn therefrom, thus imposing upon the police jury, if it undertook to consider the counterpetitions, the arduous task of ascertaining, first, whether their names appeared on the petitions, and, secondly, whether they were qualified voters. No such burden is imposed upon police juries under the law. The police jury in this case could not de-

lay calling the election when presented with petitions properly drawn and containing the requisite number of signers requesting that it be done, on the mere chance that a sufficient number of qualified voters who had signed the original petitions also may have signed the conterpetitions to reduce the number of qualified voters requesting the calling of the election below the number required by law. And that is particularly true in a case like this, where the counterpetitions do. not show that the signers thereof are qualified voters nor that their names appear on the original petitions. We find no merit in plaintiffs' first complaint.

■ The second ground of plaintiffs' complaint is that Act No. 17 of the First Extra Session of 1935, the Local Option Law, is unconstitutional, because there was no constitutional authority for the adoption of the statute by the Legislature. Plaintiffs' argument is that at the time the Constitution of 1921 was adopted, the Eighteenth Amendment to the Federal Constitution and the Volstead Act, 27 U. S.C.A. § 1 et seq., were in effect and presumably, therefore, the framers of the Constitution of 1921 deliberately omitted Article 181 of the Constitution of 1898 and 1913, expressly authorizing the Legislature to enact laws regulating the sale of alcoholic or spirituous liquors, from which the conclusion must be drawn that the framers of the Constitution did not intend to give the Legislature the right to prohibit or suppress the sale of liquor, but, on the contrary, deliberately took the power away from the Legislature to do so. There is no force in plaintiffs' argument. While the Constitution of 1921 may not have given the Legislature express authority to enact laws regulating the sale of intoxicating liquors, nowhere in the Constitution is the Legislature prohibited from enacting such laws. It is a familiar rule of law that the Legislature of a State, unlike Congress, which cannot do anything which the Federal Constitution does not authorize, may do everything which the State Constitution does not prohibit. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49. We find no merit in plaintiffs' second complaint.

■ In a brief filed by counsel employed by certain persons who are not petitioners in this case to appear as amicus curiae, it is suggested that the ordinance of the police jury is illegal for having stipulated a regulation for a less percentage of alcohol than the law allows a police jury to stipulate, and that the local option statute is unconstitutional because the body of the statute is broader than the title. The suggestion is supported by a most ingenuous and interesting argument, but it can not be considered by this Court since the questions involved were not raised in the pleadings of the parties themselves nor presented by them to the district court. They are raised for the first time in the brief of the amicus curiae, which merely contains his written argument and forms no part of the pleadings.

■ The third ground of plaintiffs' complaint is that the parish-wide prohibition

election was held within less than one year from the time local option elections were held in Wards Three and Six of the Parish, contrary to the provision of the law that "no election on any such question shall be held oftener than once a year." The provision in question is contained in paragraph 1 of section 4 of the Local Option Law and applies to any parish, ward or municipality in the State. While it is clear that under the plain terms of the statutory provision two local option elections can not be held within the same political subdivision within a period of one year, there is nothing in the statute which provides that a ward election will serve to break the unity of the parish so as to prevent the holding of a parish-wide election until more than one year has elapsed from the time the ward election was held. If plaintiffs' contention were accepted as correct, two wards of the parish, by holding local option elections every six months, could prevent a parish-wide local option election. The Members of the Legislature in enacting the local option law never contemplated any such absurd result. We find no merit in plaintiffs' third complaint.

The fourth ground of plaintiffs' complaint is that four hundred ninety-eight voters of Wards Three and Six, Parish of Natchitoches, which had previously voted dry, signed the petitions for the parish-wide election and that, therefore, those voters who had participated in the ward elections were not eligible to vote in the parish-wide election held within one year thereafter.

■ The mere fact that two wards of the Parish of Natchitoches were voted dry by their electors did not break the unity of the parish and deprive its voters of their right to petition the police jury to call the parish-wide election on the question of prohibition and to participate in that election when it was called. Frazier v. Police Jury, 194 La. 1049, 195 So. 535. We find no merit in plaintiffs' fourth complaint.

■ The fifth ground of plaintiffs' complaint is that the City of Natchitoches is governed by a special charter under which the municipality and not the police jury is given the exclusive authority to regulate saloons and shops for retailing liquor. Under Act No. 17 of the First Extra Session of 1935, Local Option Law, the parish is made a unit in which all the municipalities within its territorial limits are included. The statute also provides the method by which the voters of the parish may exercise their right to have determined whether the parish should be wet or dry, and that is through the police jury. The police jury is merely the instrumentality designed by law through which the will of the voters of the parish may be ascertained by means of a parish-wide election. It is the mandatory duty of the police jury to call the election when it has been requested to do so by petitions signed by the requisite number of qualified voters of the parish and properly certified by the Registrar of Voters. It is also its mandatory duty to adopt an ordinance giving effect to the result of the election. The ordinance results from the mandate of the people and not from any

attempt on the part of the police jury to exercise governmental powers over the municipality.

The charter of the City of Natchitoches prohibits the police jury, as the governing body of the parish, from exercising any control over the municipal government, but it does not prohibit the police jury from adopting an ordinance establishing parish-wide prohibition which affects the municipality, as well as every other portion of the parish. Police Jury v. Town of Mansura, 119 La. 300, 44 So. 23. We find no merit in plaintiffs' fifth complaint.

The sixth ground of plaintiffs' complaint is that voters residing in the City of Natchitoches were without right to petition and the police jury was without right to order a parish-wide prohibition election affecting the municipality. Plaintiffs contend that the names of one thousand voters of the City of Natchitoches should have been deducted from the names attached to the petitions asking the police jury to call the election which, if it were done, would have left attached to the petitions the names of less than twenty-five per cent of the qualified voters of the parish. Since the local option law authorizes the qualified voters of a parish to petition the police jury to call a parish-wide election on the question of prohibition affecting every portion of the parish including the municipalities, there is no reason why qualified voters of the City of Natchitoches could not join the qualified electors of other portions of the parish in signing such

petitions. Moreover, there is no proof in the record showing how many qualified voters residing in the City of Natchitoches actually signed the petitions asking that the parish-wide prohibition election be called. We find no merit in plaintiffs' sixth complaint.

The seventh and last ground of plaintiffs' complaint, urged in the alternative, is that the petitions addressed to the police jury called for an election on two separate propositions, but that only one proposition was submitted to the voters.

The proposition which the petitioners requested the police jury to submit to the voters was this: "To determine whether the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing, or consuming of alcoholic or intoxicating liquors, that is, (a) beer, porter, ale, fruit juices, wine or other alcoholic liquors of an alcoholic content greater than one-half of one per centum of alcohol by volume, but not exceeding six per centum of alcohol by volume, and (b) malt, vinous, spirituous, alcoholic or intoxicating liquors containing more than six per centum of alcohol by volume, otherwise than when prescribed by a licensed physician as medicine, shall be permitted in Natchitoches Parish, Louisiana, or whether the same shall be prohibited in said Parish."

The proposition which the police jury by ordinance ordered submitted to the voters was this: "Shall the sale or keeping for sale of intoxicating liquors containing more than one-half of one per centum by vol-

ume, for beverage purposes, within the confines of the Parish of Natchitoches, State of Louisiana, be permitted."

Plaintiffs argue that in accordance with the request contained in the petitions for the local option election the police jury should have submitted to the voters two separate and alternative propositions, to-wit: (1) Whether the sale of alcoholic or intoxicating liquors containing more than one-half of one per cent of alcohol by volume but not exceeding six per cent of alcohol by volume should be prohibited, or (2) whether the sale of only those alcoholic or intoxicating liquors containing more than six per cent of alcohol by volume should be prohibited. Plaintiffs further argue that if the petitions had contained only the request that an election should be called on the question of prohibiting the sale of liquors containing more than six per cent of alcohol by volume, the police jury would have had no authority to call an election prohibiting the sale of liquors containing only one-half of one per cent by volume. And, likewise, if the petitions had contained a request for the prohibition of the sale of mild liquor only, then the police jury would have had no authority to call an election to prohibit the sale of hard liquor. That is unquestionably true, but the police jury did not do either of those things in this case.

The narrow question to be determined here is whether the proposition submitted to the voters met the requirements of Act No. 17 of the Extra Session of 1935, the Local Option Law, under which the election was held.

Section 1 of the Act provides that the parishes of the state may determine by ballot whether or not alcoholic or intoxicating liquors as defined in the statute shall be sold otherwise than when prescribed by a licensed physician as medicine. The section further provides that if at an election held for that purpose, a majority of those voting determine that the business of manufacturing, selling, etc., of "alcoholic or intoxicating liquors as defined in Section 2 of this Act," shall not be licensed or permitted, then "such business shall not be therein licensed or permitted."

According to section 2, the words "alcoholic or intoxicating liquors" as used in the statute are held to include:

"(a) Beer, porter, ale, fruit juices, wines, or other alcoholic liquors, of an alcoholic content greater than one-half of one per centum of alcohol by volume * * *;

"(b) Malt, vinous, spirituous, alcoholic, or intoxicating liquors containing more than six per centum of alcohol by volume."

Immediately following the foregoing definition and classification of alcoholic and intoxicating liquors, section 2 provides: "That at any election held under the authority of this Act propositions in respect to the traffic in all such liquors defined in the above paragraphs (a) and (b) of this section, or in respect to either those defined in paragraph (a) or those defined in paragraph (b), may be submitted to the electors."

The police jury, as shown by the ordinance and the form of the ballot, sub-

mitted to the voters the single question of whether or not they were in favor of selling or keeping for sale intoxicating liquors containing more than one-half of one per centum of alcohol by volume within the parish of Natchitoches. This proposition was strictly in keeping with the all-exclusive and not alternative proposition that the police jury was requested to submit to the voters, which was whether or not the sale or keeping for sale of any and all kinds of liquors containing more than one-half of one per cent of alcohol by volume should be prohibited.

In Pennix v. Webster Parish Police Jury, 188 La. 902, 178 So. 390, where the proposition was to prohibit the sale in a particular ward of any and all kinds of liquors containing more than one-half of one per cent of alcohol by volume, this Court held that it was not necessary to submit the two propositions alternatively so as to give the voters an opportunity to vote separately on each of the two classes of alcoholic liquors mentioned in the statute.

The Pennix case was cited with approval in the subsequent case of Shaw v. Police Jury of Beauregard Parish, 202 La. 774, 12 So.2d 810. In that case the proposition, stated in the petition to the police jury and submitted to the voters throughout the parish, was whether the business of selling intoxicating liquors as defined in section 2 of Act No. 17 of the First Extra Session of 1935, otherwise than when prescribed by a licensed physician as a medicine, should be licensed or permitted within the Parish of Beauregard. In this case, the proposition contained in the petitions to the police jury, instead of merely referring to intoxicating liquors as defined in section 2 of the statute, actually tracks the words of the statute defining and classifying such liquors. In that respect the issue in this case is substantially the same as the issue in the Shaw case, holding that where the proposition to be submitted to electors under the local option law in a parish in which there was no prohibition against the sale of any kind of intoxicating liquors was to prohibit the sale of all liquors containing more than one-half of one per cent of alcohol by volume, it was not necessary to submit propositions as to mild liquor and hard liquor separately.

The decisions in the Pennix and Shaw cases are decisive of the issue involved in the present discussion. We find no merit in plaintiffs' seventh and last complaint.

For the reasons assigned, the judgment appealed from is affirmed.

HIGGINS, J., takes no part.